**W. D. YORK, Appellant,**

v.

**Edgar I. WELLS et al., Appellees.**

No. 13058.

Court of Civil Appeals of Texas.

Galveston.

Feb. 28, 1957.

Rehearing Denied March 21, 1957.

Stanton Stone, Freeport, Fulbright, Crooker, Freeman, Bates & Jaworski and Russell Talbott, Houston, for appellant.

W. James Kronzer, and Robert L. Steely, Houston, and Hill, Brown, Kronzer & Abraham, Houston, and Sam Lee and Jimmy Phillips, Angleton, of counsel, for appellees.

HAMBLEN, Chief Justice.

This is an appeal from an order overruling appellant's plea of privilege to be sued in the county of his residence, Harris County. Trial was before the court. No findings were requested or filed.

The suit was brought by Edgar I. Wells and wife, Esther Wells, for damages for personal injuries of each as a result of a collision with a tractor trailer. The suit

was against Cactus Transport, a corporation, and appellant, W. D. York, an individual. Cactus Transport waived its plea of privilege. It was stipulated for the hearing of York's plea of privilege that the driver of the tractor was guilty of negligence that proximately caused the accident. The litigants agree that the only issue on appeal is whether or not the record supports the presumed finding of the trial court that there was at the time of the collision an agency relationship existing between appellant and the driver of the truck involved in the collision. In two points of error appellant complains that the trial court erred in overruling appellant's plea of privilege and in finding presumably that the driver of the truck was an agent acting in the course of his employment for appellant.

Appellees pled in part as follows: "The operator of the tractor and trailer was on said occasion acting within the course and scope of his employment for W. D. York and Cactus Transport, defendant * * *."

It is appellant's position that the operator of the tractor and trailer was the agent of Cactus Transport alone and that the only relationship between appellant and Cactus Transport was that of bailor and bailee, respectively, of the tractor. After carefully examining the evidence in the record, we reach the conclusion that it is such as to support a finding that appellant and Cactus Transport were engaged in a joint venture, as appellees contend. We are further of the opinion that the quoted portion of appellees' pleadings is sufficient to support the order overruling the plea of privilege based upon such finding. We overrule appellant's points of error upon the proposition that in a review such as this we must presume that the trial court made such findings in support of the judgment rendered as the pleadings and the evidence will support.

On the hearing of the plea of privilege the only evidence offered was the testimony of appellant, W. D. York, called by appellees as an adverse witness. In his brief appellant asserts that the following "is the only relevant evidence as to the ultimate issue which was, who had the legal right to control the driver in the details of the performance of his work?" We quote:

"The lease agreement whereby York, individually, leased the tractor-trailer unit involved in the collision to Cactus Transport was identified and introduced. This instrument dated July 5, 1955 (collision was September 12, 1955) by its own terms was executed by W. D. York as lessor and owner of the vehicle and Cactus Transport as lessee and owner of Certificate. At the top is the recitation that the equipment is not the subject of any other lease filed with the Department of Public Safety in accordance with Senate Bill No. 122. The equipment leased was described. The term was 'until either party cancels.' The consideration was $100 per month. The equipment was to be used by lessee in connection with the operation of Railroad Commission Certificate No. 7395 for hauling petroleum products. Then follows:

" '1. The lessee agrees to furnish a driver and fuel.

" '2. The lessee agrees to keep said vehicle in good repair and running order.

\*     \*     \*     \*     \*     \*

" '5. Lessee, the owner of the Certificate, assumes complete control of this truck * * *.'

"Mr. York further testified that he had not hired or fired any of the drivers in a long time; that the hiring and firing of drivers was done by Mr. Draper, terminal manager for Cactus Transport, and that Cactus Transport pays all operating expenses, pays the driver, furnishes the gasoline, and maintains the truck."

Appellees readily concede that the lease agreement is prima facie evidence that the relationship between York and Cactus Transport is that of bailor and bailee, and that if the tractor had in fact been operated in accordance with the terms of such agreement there would arise no liability on the part of appellant under the doctrine of respondeat superior. However, appellees contend, and we must agree, that the evidence above quoted is not all of the relevant

evidence upon the issue of power of control, and further that appellant's recitation of the evidence upon which he relies is not a correct interpretation of the testimony of the witness, or that in any event the testimony and the inferences to be drawn therefrom will support factual conclusions different from those recited by appellant.

Under examination by appellees' counsel, York testified that he was the owner of the tractor involved in the collision in question and that Cactus Transport was the owner of the Railroad Commission certificate described in the lease agreement. York was president of Cactus Transport, a corporation, and owned 45% of the stock of that company. Cactus Transport did not own any tractors. The lease was made in order that York's truck might make use of the Railroad Commission certificate, and in order to comply with the provisions of Senate Bill No. 122. He admitted that the terms of the lease agreement were not followed in so far as the monthly rental provision was concerned. On the contrary, he testified that the gross receipts from the operation of the tractor were divided so as to give 20% to Cactus Transport and 80% to York. While he testified that Cactus Transport paid the expenses of operating the tractor, he admitted under searching cross-examination that such expenses were paid out of his own 80% of the gross receipts. The recitation in appellant's brief that Cactus Transport paid the expenses of operating the tractor can be reconciled with the admissions of appellant himself only upon the theory that such recitation has reference to the mechanics of handling the receipts from the tractor from a bookkeeping standpoint. After our review of the testimony, we conclude that it supports, if it does not under any fair construction compel, the finding that Cactus Transport received 20% of the gross receipts without deduction, and that York received so much as remained of 80% of the gross receipts after there had been deducted therefrom the expenses of operating the tractor. Such expenses were shown to include a contribution for workmen's compensation insurance on the driver, repair expenses, gasoline, and the driver's salary. Asked the question, "You don't as an individual or president of the company concern yourself with the operation and maintenance and condition of those trucks?" the witness answered, "I have people taking care of that maintenance, and I think they are qualified." Asked the question, "Do you ever hire and fire any of the drivers?" he answered, "No, sir, not in a long, long, time." The very nature of this last answer implies that the witness had in the past, and under the arrangement existing between him and Cactus Transport, hired and fired truck drivers. The fact that he had not for a long, long time exercised that power does not militate against his right to do so. His answer to the first quoted question supports the finding that he had control of the operation and maintenance of the truck in question, which he exercised through employees whom he considered qualified.

When it is remembered that all of the evidence adduced before the trial court is from the lips of an interested witness, and that under the law the trier of the facts is entitled to believe or disbelieve all or any part of that evidence, we feel that the record as a whole will support the conclusion that the lease agreement upon which appellant relies is but a subterfuge designed solely to comply with the requirements of Senate Bill No. 122, and that under the true arrangement appellant had the legal right to control the driver of the tractor in the details of the performance of his work. In so far as this appeal is concerned, we hold that the evidence abundantly supports findings to the effect that York and Cactus Transport were jointly interested in the operation of the tractor in question, had a joint interest in the profits derived therefrom, a joint exposure to losses incurred, and joint power to control the driver of the truck. It requires no citation of authority for the proposition that these facts establish the existence of a joint venture.

The judgment of the trial court is affirmed.